HOLLOWAY, D.B.A. HOLLOWAY PRODUCTIONS, ET AL., APPELLANTS, *v.* BROWN, ATTORNEY GENERAL, ET AL., APPELLEES.

[Cite as Holloway v. Brown (1980), 62 Ohio St. 2d 65.]

(No. 79-383—Decided April 9, 1980.)

*Messrs. McIntosh, McIntosh & Knabe* and *Mr. Bruce B. McIntosh,* for appellants.

*Mr. Thomas A. Luebbers,* city solicitor, and *Ms. Nancy H. Simmons,* for appellees city of Cincinnati and Charitable Solicitations Commission.

*Mr. William J. Brown,* attorney general, and *Mr. Lawrence D. Pratt,* for appellee state of Ohio.

CELEBREZZE, C. J. Pursuant to Cincinnati Municipal Code Chapter 821, no person can solicit for a charitable person (organization) unless the charitable person is registered with the Charitable Solicitations Commission. There are some exceptions to this rule.

Under Section 821-5(a) of the ordinance, if the solicitor is a member or officer of the organization and solicits voluntarily and without remuneration, among the normal constituency or supporters of the organization, no registration is required. Under Section 821-5(b), "[if] the solicitation is in the form of collection or contribution at a regular assembly or services" of the organization, then no registration is required.

In addition to the requirement that the charitable person be registered, professional promoters and solicitors must be licensed under Sections 821-31 and 821-39, respectively. A professional promoter, as defined in Section 821-1-P1, is any person, except an officer or employee of the charitable person, "who for compensation plans, promotes, conducts, manages

or carries on or attempts to plan, promote, conduct, manage or carry on any drive or campaign for the purpose of soliciting contributions for or on behalf of any charitable person or engages in the business of soliciting contributions for charitable purposes."

A professional solicitor, as defined in Section 821-1-P2, is any person, other than a professional promoter, not an employee or officer of a charitable person, who is compensated to make solicitations for that charitable person.

The commission, under Section 821-13, must grant registration, upon payment of a fee of one dollar to five hundred dollars, based on the amount raised and the city's needs (Section 821-9), unless it finds:

"(a) That one or more of the statements made in the application is not true.

"* * *

"(d) That the applicant is or has engaged in a fraudulent transaction or enterprise.

"(e) That a solicitation on behalf of applicant would be a fraud upon the public.

"(f) That the applicant has violated a provision of this chapter involving moral turpitude or has violated a provision not involving moral turpitude within two (2) years prior to the date of application.

"(g) That the cost of solicitation or the cost of promotion for a charitable solicitation made in the city of Cincinnati for or on behalf of the applicant during any of the three (3) years immediately preceding the date of application was unreasonable.

"(h) That the applicant has not registered as required by Sections 1716.01, *et seq.,* of the Revised Code of Ohio. Registration shall be effective until revoked by the commission for cause, or cancelled at the request of the registrant."

The cost of promotion is defined in Section 821-1-C2 as the reasonable cost of giving or holding an event or of acquiring goods or publications sold or used as prizes, but not including the actual cost of selling or any cost within the definition of cost of solicitation. The cost of solicitation is defined in Section 821-1-C3 as all costs incurred in raising funds except those involved in presenting an event or in selling goods. However, the actual cost of selling goods is part of the cost of solicitation as

is any compensation paid to a professional promoter or solicitor.

A *prima facie* case of unreasonable cost of promotion is made under Section 821-19 when it is shown that the cost of promotion is more than 75 percent of the gross amount realized for the event. A *prima facie* case of unreasonable cost of solicitation is made when it is shown that the cost of solicitation is more than 15 percent of the gross amount realized, reduced by the cost of promotion. This allows a charity to pay up to approximately 78.75 percent of the gross amount it realizes on a given solicitation as the costs of obtaining these funds. In addition, because these figures only establish a *prima facie* case, the charitable person can show that higher costs are reasonable.

The commission, pursuant to Section 821-33, must grant a professional promoter's license upon payment of a $75 fee unless it finds:

"(b) That one or more of the statements made in the application is not true.

"(c) That the applicant or an officer, agent or member of the applicant has violated a provision of this chapter within three (3) years immediately preceding the date of this application or has violated a provision of this chapter involving moral turpitude.

"(d) That the applicant has engaged in a fraudulent transaction or enterprise.

"(e) That the applicant is not registered and bonded as a professional fund raiser under the provisions of Chapter 1716, Revised Code of Ohio."

The commission, pursuant to Section 821-39, must grant a professional solicitor's license upon payment of a fee of $7.50 and a finding that he has registered pursuant to R. C. Chapter 1716.

Registration and licenses can be revoked for, *inter alia,* violations of the ordinance, for misrepresentation, or for failure of the professional promoter or solicitor to properly keep accounts. It is a violation of the ordinance to solicit without the required licenses and registration, to commingle funds, to solicit fraudulently, or to solicit if the cost of solicitation or promotion is unreasonable. Violation of the ordinance

can also result in a fine of $500 and six months in jail, pursuant to Section 821-99.

The Court of Appeals held that reputation and character criteria, which the commission was permitted under the ordinance to use to deny registration or a license, are unconstitutional considerations which could be deleted from the ordinance. Appellees have filed no cross-appeal of that decision; therefore, it will stand.

"Charitable" is defined in Section 821-1-C as meaning and including "the words patriotic, philanthropic, religious, social service, welfare, benevolent, educational, civic or fraternal, either actual or purported."

Appellants, although attempting to raise new arguments before this court, have made three arguments regarding the Cincinnati ordinance throughout the course of the case. It is these latter arguments only that we address. Appellants contend that the standards used by the commission to grant or deny registration and licenses infringe on their rights of free speech, that the definition of "charitable" is unconstitutionally vague, and that the discriminatory impact of the ordinance against the professional promoter and solicitor violates their rights to equal protection and due process of law.

Appellants' free speech claims arise from the First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution, and the guarantees of equal protection and due process of law arise under the Fourteenth Amendment to the United States Constitution and Sections 1, 2, 16 and 19 of Article I of the Ohio Constitution.

Federal law on these matters is substantially similar to the Ohio law. *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6; *Lehman* v. *Shaker Heights* (1973), 34 Ohio St. 2d 143, affirmed (1974), 418 U.S. 298.

The first issue we must address is to what extent First Amendment protections are afforded to charities and to professional promoters and solicitors.

The professional promoter and solicitor are not exercising the right to communicate ideas but are exercising the right to make a profit. The right to make a profit is not protected by the First Amendment. *Ohralik* v. *Ohio State Bar Assn.* (1978), 436 U.S. 447; *Breard* v. *Alexandria* (1951), 341 U.S. 622.

Charities, however, do appear to be afforded some protection against regulation of their solicitation practices under the Ohio and United States Constitutions' free speech provisions.

In two recent decisions the United States Supreme Court has made it clear that charitable solicitations are protected under the First Amendment to the United States Constitution and that regulation of the manner in which such solicitation can be made is subject to significant limitations.

In *Hynes* v. *Mayor of Oradell* (1976), 425 U.S. 610, the court recognized the need to balance the free speech rights inherent in charitable solicitation against the state's interest in protecting its citizens. Regulations of charitable solicitations must be, according to *Hynes,* narrowly drawn, must not vest municipal officials with the undefined power to determine what people will hear, must be a reasonable means of achieving legitimate, important social interests, and must be drafted clearly enough that men of ordinary intelligence can discern its meaning, or it will be held unconstitutional.

*Hynes* involved two ordinances—one which required solicitors to receive permission to solicit and the other which excepted, among others, one soliciting for "a recognized charitable cause***or***a political campaign or cause." Solicitors under the latter provision were required to give notice to the police department. The court held that because men of ordinary intelligence could not discern what a charitable or political cause is or how one could comply with the notice requirement, the ordinances were vague and an unconstitutional infringement on the right of free speech.

In *Village of Schaumburg* v. *Citizens for a Better Environment* (1980), _____ U. S. _____, 48 U. S. L. W. 4162, the Supreme Court stated, at page 4165, that "[p]rior authorities ***clearly establish that charitable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment. Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech

seeking support for particular causes or for particular views on economic, political or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease. Canvassers in such contexts are necessarily more than solicitors for money."

In *Village of Schaumburg,* the court affirmed a decision by the Court of Appeals for the Seventh Circuit which held an ordinance unconstitutional which required a permit in order to make a charitable solicitation and provided for denial of such a permit if less than 75 percent of the proceeds were to be used directly for the charitable purpose. The definition of use for the charitable purposes of an organization specifically excluded the costs of solicitation and administrative expenses. Organizations could only use 25 percent of money collected for the expenses of operating the charity.

The court determined that the 25 percent limitation was "a direct and substantial limitation on protected activity," largely due to the fact that the restriction effectively denied all charities in the business of distributing information from soliciting funds because of relatively high yet justifiable administrative expenses. The statute was not narrowly drawn. Because there was a direct and substantial limitation on protected activity, the court stated, at page 4166, that the regulation "cannot be sustained unless it serves a sufficiently strong, subordinating interest that the Village is entitled to protect."

Under *Village of Schaumburg* then, if an ordinance is not narrowly drawn, a strong, subordinating state interest must be shown. If the other requirements enumerated in *Hynes* are fulfilled though, it must only be shown that the regulation is a reasonable means of achieving legitimate, important social interests.

The instant ordinance is quite different from the one involved in *Village of Schaumburg.* It sets a significantly higher limit on costs and limits such costs to actual costs of raising funds. In addition, it allows rebuttal of the *prima facie* case of unreasonableness which is established by the percentage limitations.

In *National Foundation* v. *Fort Worth* (C.A. 5, 1969), 415 F. 2d 41, certiorari denied (1970), 396 U.S. 1040, the court

found an ordinance allowing rebuttal of percentage limits on charitable solicitation costs to be constitutional. In footnote 9 of *Village of Schaumburg,* at page 4166, the court distinguished the *National Foundation* case, saying that "[u]nlike the ordinance upheld in *National Foundation* v. *Fort Worth*\*\*\*the Village ordinance has no provision permitting an organization unable to comply with the 75-percent requirement to obtain a permit by demonstrating that its solicitation costs are nevertheless reasonable."

Due to the differences between the limitations placed on charitable expenses in the Cincinnati and Schaumburg ordinances, differences recognized in part by the United States Supreme Court in *Village of Schaumburg,* the Cincinnati ordinance is within the limitations placed on the regulation of charitable solicitation in *Hynes* and *Village of Schaumburg.*

The use of specified percentages to constitute a *prima facie* case of unreasonable conduct limits commission discretion in granting the registrations and licenses. The commission's power is not undefined. In addition, the specified percentages inform the public of what conduct is proscribed.

Limitation of the commission's use of discretion though, in and of itself, would not be enough. The regulation must also be narrowly drawn and must be a reasonable means of taking care of a legitimate social interest.

The instant ordinance is narrowly drawn. Unlike the ordinance in *Village of Schaumburg,* the instant ordinance only limits the costs of collecting funds, not office overhead. The ceilings set are considerably higher than those in *Village of Schaumburg.* Consequently, the ordinance will not effectively forbid charities which exist to distribute information from collecting funds. In addition, a charity, promoter, or solicitor can rebut the *prima facie* case established by the percentage limitations and show that costs in excess of the limits are, in fact, reasonable.

While it may be true that in balancing the state's rights against free speech rights, a close relationship is required between the regulation and the goals sought in order to justify the regulation, the ordinance in question is very closely related to the prevention of fraud and misrepresentation. This is due to the flexibility inherent in the ordinance. Discretion is limited

74

by the specified limitations; and because people can rebut the *prima facie* case established by the percentage limitations, the ordinance should screen out only those solicitations which indeed pose a substantial risk of invoking fraud or misrepresentation.

We hold that an ordinance which allows charities to use non-affiliated solicitors only when the cost of that use is reasonable does not violate the charity's right of free speech when percentage limitations are specified which constitute a *prima facie* case of unreasonableness, but which can be rebutted.

There are other reasons for denying registration and licenses. These, too, must be within the limitations set by *Hynes.*

It is not unreasonable to deny such licenses or registrations based on an untrue statement in the application, on the fact the applicant has engaged or will engage in a fraudulent transaction, or on a failure to be properly registered or bonded. We interpret fraud to have its common law meaning and find this term to be both reasonable and sufficiently defined to limit commission discretion. The other two factors clearly involve no discretion, are reasonable, and are narrowly drawn.

Appellants have objected to the denial of licenses and registrations based on past or future violations of the ordinance. There is only one instance in which a prospective violation of the ordinance can be used to deny the right to solicit. If the commission finds that a solicitation will be fraudulent, under Section 821-13(e), it can refuse to register the charitable person. In the case of actual common law fraud, this is constitutional, for the state has a strong, subordinating interest in preventing fraud before it occurs.

With the exception of fraud, the ordinance provides for denial or revocation of registration and licenses only after a violation of the ordinance has occurred. We find nothing objectionable in denying or revoking licenses and registrations based on past violations of the ordinance.

A solicitation involving unreasonable cost promotion and solicitation, failure to obtain required permits, misrepresentation and fraud, or commingling of funds, violates the ordinance.

As discussed above, use of unreasonable costs as defined by the ordinance is a permissible means of regulating charitable solicitation. The other violations are narrow in scope, reasonably related to the state's objective of preventing fraud and misrepresentation, non-discretionary, and their meaning can be discerned by men of ordinary intelligence. Use of the past violations is not violative of appellants' free speech rights.

The word "charitable," as defined in the ordinance is not a violation of appellants' free speech rights, although appellants assert that it is unconstitutionally vague. In *Hynes, supra,* the court found that the use of the word "recognized" to modify charity was vague and unconstitutional. By not discussing the term "charitable," the court impliedly held that the word "charitable," in and of itself, is permissible. "Charitable" does have a meaning which men of common, ordinary intelligence can discern. This is especially true when the term is defined more specifically in the ordinance. In addition, this court has construed the term in *Planned Parenthood Assn.* v. *Tax Commr.* (1966), 5 Ohio St. 2d 117, in paragraph one of the syllabus, as "the attempt in good faith, spiritually, physically, intellectually, socially and economically to advance and benefit mankind in general, or those in need of advancement and benefit in particular, without regard to their ability to supply that need from other sources, and without hope or expectation, if not with positive abnegation, of gain or profit by the donor or by the instrumentality of the charity." We find the word "charitable," as defined in Section 821-1-C, is not void for vagueness.

Finally, the regulation of the professional promoter is not a violation of appellants' rights to due process and equal protection of the law. The equal protection claim involves the disproportionate treatment of the professional promoter and the charity utilizing that promoter. The due process claim involves the interference with the professional promoter's business for profit. Under either guarantee, a rational basis analysis is used, for no fundamental right or suspect classification is involved. *Massachusetts Bd. of Retirement* v. *Murgia* (1976), 427 U.S. 307; *Dandridge* v. *Williams* (1970), 397 U.S. 471; *Breard* v. *Alexandria, supra* (341 U.S. 622). Under this

analysis, the state action is valid if it bears some rational relationship to a legitimate state interest.

Any singling out of professional solicitors (promoters) and of the charities utilizing them is in recognition of the greater potential for such solicitations to involve fraud. As in the case at bar, the promoter is normally soliciting only to make a profit and that profit is often based on commissions. The member or employee of the charity is normally not compensated on a commission basis. There is much greater potential for misrepresentation and fraud on the part of a person working on a commission basis. In addition, the professional promoter often is an independent contractor and the charity only oversees the money given it by the promoter. On the other hand, the charity's officers and employees work for the charity, which then oversees the entire operation.

The ordinance also excepts collections at regular assemblies or services. This exception is rationally related to the city's objective as well. People attending regular assemblies or services are in a much better position to assess the use of the money contributed than the person solicited on the street.

We find no violation of the Ohio and United States Constitutions' guarantees of equal protection and due process of law by legislatively distinguishing between charitable solicitations performed by a non-affiliated solicitor in the community and those performed by parties affiliated with the charity or at the charity's regular meeting or assembly.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, W. BROWN, DOWD, SWEENEY, LOCHER and HOLMES, JJ., concur.

DOWD, J., of the Fifth Appellate District, sitting for P. BROWN, J.