**Robert R. VANATER, Plaintiff,**

v.

**VILLAGE OF SOUTH POINT, et al., Defendants.**

**No. C–1–87–708.**

United States District Court, S.D. Ohio, W.D.

June 29, 1989.

---

**1238**

John Frazier Jackson, Columbus, Ohio, for plaintiff.

Thomas A. Leubbers, Cincinnati, Ohio, David M. McCown, Ironton, Ohio, for defendants.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court pursuant to a two day trial to the Court at which both parties presented witnesses, experts and trial exhibits. Plaintiff's Complaint

seeks declaratory judgment and a permanent injunction against the defendants challenging the constitutionality of Ordinance Number 87–6 of the Village of South Point which prohibits the owning or harboring of Pit Bull Terriers or other vicious dogs within the limits of the village. On the basis of the evidence, testimony and arguments presented by both sides, the Court makes the following Findings of Fact and Conclusions of Law which are necessary to resolve the issues concerning the constitutionality of the Ordinance.

## FINDINGS OF FACT

Plaintiff, Robert Vanater, purchased a dog for his wife in late 1986. The dog was purchased for her because Mr. Vanater worked certain shifts which required him to be gone from home for long periods of time and late at night.

The Vanaters were curious about a dog called a "pit bull" which plaintiff had seen advertised in the newspaper. Mr. and Mrs. Vanater had limited knowledge and understanding about the characteristics of a Pit Bull and, after seeing the dog, they decided to purchase it.

The dog, Brandy, was brought home to live with the Vanaters and occupied the house with the family and at least one other dog. Brandy is a female dog and has been spayed. Brandy also successfully completed obedience school scoring 191 points out of 200 possible points.

Brandy was four months old when the Vanaters bought the dog and, at the time of trial, Brandy was almost two years old. In that time, Brandy got along very well with the four children in the Vanater home, with the children who visit the Vanaters and with the other dog in the house. There is no evidence that Brandy has ever displayed any displeasure toward any children or any of the Vanater's grandchildren, nor is there any evidence of violence on Brandy's part directed toward anyone in the family or in the Village of South Point.

Plaintiff licensed the dog shortly after he bought her and listed the dog as an American Pit Bull Terrier. Plaintiff did receive papers from Brandy's seller but never registered her with any club.

On June 16, 1987, the Council of the Village of South Point passed Ordinance 87–6 prohibiting the owning or harboring of a "Pit Bull Terrier" or "any other type of vicious dog" within the Village limits. A "Pit Bull Terrier" is defined as:

> ... any Staffordshire Bull Terrier or American Staffordshire Terrier breed of dog, or any mixed breed of dog which contains, as an element of its breeding the breed of Staffordshire Bull Terrier or American Staffordshire Terrier as to be identifiable as partially of the breed of Staffordshire Bull Terrier or American Staffordshire Terrier by a qualified veterinarian duly licensed by the State of Ohio.

The Ordinance went into effect on June 16, 1987.

The Ordinance is criminal in nature and provides as a penalty a $1,000 fine or imprisonment of not more than 60 days or both. In addition, the cost of shelter, food, and identification of any dog subject to the Ordinance is assessed to the potential defendant.

Brandy is kept within the Village of South Point corporation limits and is within the jurisdiction of the Village and subject to this Ordinance.

The Ordinance was proposed because Mayor William Gaskin had become concerned about the danger posed by Pit Bulls which came to light from media reports and calls from concerned citizens of South Point. This resulted from reports of two attacks by Pit Bulls on citizens in neighboring cities within a 10–mile radius of South Point; one of the attacks occurred in Ironton which is approximately six miles from South Point, and the other in Lawrence County, outside of Ironton and also a few miles from South Point. No Pit Bull attacks were ever reported in the Village of South Point.

Carl Vance, Police Chief of the Village, received a number of complaints concerning Pit Bulls in the six months to one year period prior to the proposal of the Ordi-

nance and also received four or five oral complaints concerning Brandy specifically.

Upon investigation, Mayor Gaskin determined that there were six or seven Pit Bulls within the Village of South Point; these Pit Bulls were only identified by Mayor Gaskin through callers who said they saw "Pit Bulls;" that identification, however, was not specifically connected to the definition given in Ordinance 87-6.

Responding to this concern and information, the Mayor caused Ordinance 87-6 to be prepared and presented it to the City Council. The proposed Ordinance received heavy publicity and was the subject of comment by the public at three council meetings. The issues presented by the Ordinance were debated at three public meetings at which all citizens were given a full and fair opportunity to be heard.

During the council meetings held before the passage of the Ordinance, both proponents and opponents spoke freely of their opinions about Pit Bulls and the Ordinance. No scientific evidence or expert testimony regarding what a Pit Bull is or whether it is inherently more vicious, dangerous or prone to attack than other dogs was offered or addressed in these hearings.

Plaintiff Vanater was among those who spoke against the Ordinance while it was being considered. Chief Vance, whose job it is to enforce Ordinance 87-6 within the village limits, testified that neither he nor any of his staff members had training in identifying dogs and explained that there is no such known training available to educate law enforcement officers. Chief Vance also has no expertise in identifying certain dog breeds or confirming whether they would or would not violate the Ordinance as "Pit Bulls."

The Ordinance was passed by a 4-2 vote as a necessary control to eliminate the risk of attack by Pit Bulls and other vicious dogs which "have become a threat to the health, safety, and welfare of the public in all areas of the Village of South Point." The Ordinance was passed for this purpose as an emergency ordinance necessary for the "immediate" protection of the public.

The village's enforcement policy with respect to Ordinance 87-6 is to verify the identification of dogs suspected to be Pit Bulls by either the owner or a qualified veterinarian.

Pit Bulls vary in their size, shape and color, and both the plaintiff and defense experts testified that they have been wrong in their identification of dogs.

There is no statistically definable qualitative method to distinguish a Pit Bull by its biochemical makeup.

While identification of the breed of a dog may be difficult in some situations, the facts adduced at trial establish that there are certain confirming characteristics to what is described as a Pit Bull.

There is an ample body of literature which can aid in the identification of Pit Bulls and, most often, a Pit Bull is identifiable as such by its conformation. "Pit Bull" does describe an identifiable type of dog.

The conformation alone does not pose the high risk of danger, but it is an indicator of the Pit Bull's *ability* to perform in an unreasonably dangerous manner.

Pit Bulls also possess the quality of gameness, which is not a totally clear concept, but which can be described as the propensity to catch and maul an attacked victim unrelentingly until death occurs, or as the continuing tenacity and tendency to attack repeatedly for the purpose of killing. It is clear that the unquantifiable, unpredictable agressiveness and gameness of Pit Bulls make them uniquely dangerous.

Pit Bulls have the following distinctive behavioral characteristics: a) grasping strength, b) climbing and hanging ability, c) weight pulling ability, d) a history of frenzy, which is the trait of unusual relentless ferocity or the extreme concentration on fighting and attacking, e) a history of catching, fighting, and killing instinct, f) the ability to be extremely destructive and aggressive, g) highly tolerant of pain, h) great biting strength, i) undying tenacity and courage and they are highly unpredictable.

While these traits, tendencies or abilities are not unique to Pit Bulls exclusively, Pit Bulls will have these instincts and phenotypical characteristics; most siginficantly, such characteristics can be latent and may appear without warning or provocation.

The breeding history of Pit Bulls makes it impossible to rule out a violent *propensity* for any one dog as gameness and aggressiveness can be hidden for years. Given the Pit Bull's genetical physical strengths and abilities, a Pit Bull always poses the *possibility* of danger; given the Pit Bull's breeding history as a fighting dog and the latency of its aggressiveness and gameness, the Pit Bull poses a danger distinct from other breeds of dogs which do not so uniformly share those traits.

While Pit Bulls are not the only breed of dog which can be dangerous or vicious, it is reasonable to single out the breed to anticipate and avoid the dangerous aggressiveness which may be undetectable in a Pit Bull.

## CONCLUSIONS OF LAW

### I. *Valid Exercise of Police Power*

■ Local government is accorded a great deal of discretion in this area of legislation. Villages are given the authority to adopt and enforce within their limits local "police" regulations as long as those regulations are not in conflict with the general laws of the state. This police power encompasses the protection of the health, safety, and welfare of the public. *See, e.g., Stone v. Mississippi,* 101 U.S. 814, 818, 25 L.Ed. 1079 (1880).

■ This police power granted to villages includes the power to prohibit. *See Benjamin v. Columbus,* 167 Ohio St. 103, syllabus ¶ 4, 146 N.E.2d 854 (1957). Although this police power is extensive, it is checked by the United States constitutional limits on the power of government to act with regard to private property. *Jacobson v. Massachusetts,* 197 U.S. 11, 25, 25 S.Ct. 358, 361, 49 L.Ed. 643 (1905). Clearly, the Village of South Point cannot deprive Mr. Vanater of property without due process of law or deny Mr. Vanater equal protection of the laws.

■ It is a well established principle, however, that property is held subject to the general police power of a state and may be regulated pursuant to the police power. *Porter v. City of Oberlin,* 1 Ohio St.2d 143, 205 N.E.2d 363 (1965). The Constitution of Ohio specifically recognizes the subordination of private property to the general welfare. Ohio Const. Art. I, § 19. In the *Benjamin* case, the Ohio Supreme Court set forth the following standard for reviewing challenges to police power regulations:

> Although almost every exercise of the police power will necessarily either interfere with the enjoyment of liberty or the acquisition, possession and production of property, within the meaning of Section I of Article I of the Ohio Constitution, or involve an injury to a person within the meaning of Section I of Article XIV of the Amendments to the Constitution of the United States any exercise of the police power having such an effect will be valid if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary. Whether an exercise of the police power does bear a real and substantial relation to the public health, safety, morals or general welfare of the public and whether it is unreasonable or arbitrary are questions which are committed in the first instance to the judgment and discretion of the legislative body, and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them.

*Benjamin,* 167 Ohio St. at 103–104, syllabus ¶¶ 5 & 6, 146 N.E.2d 854.

The control of dogs falls within the "public health" and "safety" provisions. *Downing v. Cook,* 69 Ohio St.2d 149, 431 N.E.2d 995 (1982). The United States Supreme Court has held that government retains great power and discretion to control, prohibit and even destroy dogs without offending the constitutional rights of their owners. In *Sentell v. New Orleans and Car-*

*rollton R.R.*, 166 U.S. 698, 17 S.Ct. 693, 41 L.Ed. 1169 (1897), the Supreme Court considered a challenge to a dog registration law and stated:

Even if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the State, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens.

*Id.* at 704, 17 S.Ct. at 695.

■ While the Court in *Sentell* conceded that most dogs are harmless, it also approved the principle that legislatures have broad police powers to control all dogs to protect against the public nuisance posed by a vicious dog. *Id.* at 705, 17 S.Ct. at 696. Since *Sentell,* courts have upheld a wide variety of canine control ordinances based on the principle that governments' police power to control dogs is virtually unlimited. *See, e.g., Nicchia v. New York,* 254 U.S. 228, 231, 41 S.Ct. 103, 104, 65 L.Ed. 235 (1920); *Thiele v. Denver,* 135 Colo. 442, 449–50, 312 P.2d 786, 790–91 (1957); *Walker v. Towle,* 156 Ind. 639, 642, 59 N.E. 20, 22 (1901).

The Court concludes that the enactment of Ordinance 87–6 was a valid exercise of the Village of South Point's police power.

## II. *Presumption of Constitutionality*

In examining the substance of a health and welfare regulation, such as the Village of South Point Ordinance 87–6, courts apply a basic test of reasonableness: a police power regulation will be upheld as reasonable if the requirements of the law have a rational connection with the promotion and protection of public safety. *Kelley v. Johnson,* 425 U.S. 238, 247, 96 S.Ct. 1440, 1445, 47 L.Ed.2d 708 (1976); *Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934).

■ There is a heavy burden of proof imposed upon the party challenging a public safety law because such legislation is entitled to a strong presumption of constitutionality. *Jackman v. Court of Common Pleas,* 9 Ohio St.2d 159, 224 N.E.2d 906 (1967); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The strength of this presumption is further enforced when the challenged legislation is designed to promote and protect public safety. *Downing,* 69 Ohio St.2d at 151, 431 N.E.2d 995.

■ A party challenging a public safety law must prove by clear and convincing evidence that the legislative enactment is unconstitutional. *Hilton v. Toledo,* 62 Ohio St.2d 394, 405 N.E.2d 1047 (1980); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Proof by clear and convincing evidence has been defined as:

[T]hat measure of proof which is more than a 'mere preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*Cross v. Ledford,* 161 Ohio St. 469, syllabus ¶ 3, 120 N.E.2d 118 (1954).

## III. *Rational Relation to a Legitimate Governmental Interest*

■ As this Ordinance does not affect any fundamental rights such as voting or the freedom of speech and does not make a "suspect classification" such as a law based on race or nationality, the test to determine its constitutionality is whether it has a rational relationship to a legitimate state interest. *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 489, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977).

The rational basis analysis is used under either the guarantee of the due process or equal protection clauses because no fundamental right or suspect classification is involved. *Holloway v. Brown,* 62 Ohio St.2d 65, 76, 403 N.E.2d 191 (1980) citing *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *see also Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

■ While Mr. Vanater has a protected interest in the property of his dog, this interest must be balanced against the

local government's power to provide for public safety. Where justified, a deprivation of private property is a legitimate exercise of police power. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), if the Ordinance bears a rational relationship to a legitimate legislative goal or purpose. *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978); *see also Kelley,* 425 U.S. at 247, 96 S.Ct. at 1445. Further, dog ownership is not considered one of the cherished rights which the Court must carefully protect. *See Sentell,* 166 U.S. at 704, 17 S.Ct. at 695.

 The Court finds that the Ordinance is a reasonable response to the special threat presented by the Pit Bull dog breed based upon their phenotypical characteristics and the traits which have been bred into the breed by their owners in order that the animals may suit the purposes of their owners. The evidence indicates that Pit Bulls possess the inherent characteristics of exceptional aggression, athleticism, strength, viciousness and unpredictability which are unique to the breed; they possess an extraordinary fighting temperament and have been shown to be the most tenacious dog of any breed; they have a history of unpredictably and instantaneously attacking in a berserk and frenzied rage and have the ability to inflict significant damage upon their victims. While this description is not true of every Pit Bull, the Court must defer to the legislature's consideration of the conflicting positions. This Court should not substitute its judgment for the reasoned findings and decision of the Village of South Point Council.

This Court does not accept plaintiff's argument that the threat of danger is only perceived and has been fabricated by the media or by traditional misconceptions. The Court concludes that enactment of Ordinance 87–6 was based on verifiable factors and was a reasonable preventative response and solution to a dangerous and possibly tragic situation.

## IV. *Vagueness*

Since plaintiff has admitted ownership of a Pit Bull, plaintiff's vagueness challenge is that the Ordinance is facially (as written) unconstitutional, as opposed to unconstitutional as it applies to him. Plaintiff arguably lacks standing to challenge the Ordinance on this ground. "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to others." *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982); *see also Gallaher v. City of Huntington,* 759 F.2d 1155, 1160 (4th Cir.1985). A resident in the Village of South Point who owns or is considering acquiring a Pit Bull need only look at the explicit prohibition of that breed in the law to realize that he or she cannot do so.

 Facial vagueness occurs when a statute or an ordinance is so utterly void of a standard of conduct that it simply has no core and cannot be validly applied to any conduct. *See United States v. Powell,* 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975). To sustain such a challenge, the plaintiff must prove that the Ordinance is vague, "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). There is no constitutional requirement that legislation be written with scientific precision to be enforceable. "The problems of government are practical ones and may justify, if they do not require, rough accommodations —illogical, it may be, and unscientific." *Dandridge,* 397 U.S. at 485, 90 S.Ct. at 1161 citing *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913).

The United States Supreme Court has explained that "void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *United States v. Harriss*

347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954). Plaintiff claims that Ordinance 87–6 defines "Pit Bull" in such vague terms that an ordinary person would not be given fair notice as to ownership of which dogs violate the statute.

It is a fundamental requirement of a criminal statute or ordinance that it must "inform the citizen with reasonable precision what acts it intends to prohibit, so that he may have a certain understandable rule of conduct and know what acts it is his duty to avoid." 25 Ohio Jur.3d (1981), 106 Criminal Law Section 8. This is a general requirement, however, and it is not mandatory that the ordinance itself define in some manner its own terms. *See City of Lima v. McFadden*, No. 1–85–22 (3rd App.D., Allen Cty., Ohio, June 30, 1986).

Whether a dog is covered by the Village of South Point Ordinance 87–6 is a matter of evidence, not constitutional law. *See City of Lima v. McFadden* (3rd App.D., Allen Cty., Ohio, June 30, 1986). A factfinder, with the assistance of expert testimony or a qualified veterinarian duly licensed by the State of Ohio mentioned in the Ordinance, can determine whether a particular dog is within the scope of the Ordinance in most, if not all, cases.

The Court concludes that the definitions of a Pit Bull Terrier in this Ordinance are not unconstitutionally vague. An ordinary person could easily refer to a dictionary, a dog buyer's guide or any dog book for guidance and instruction; also, the American Kennel Club and United Kennel Club have set forth standards for Staffordshire Bull Terriers and American Staffordshire Terriers to help determine whether a dog is described by any one of them. While it may be true that some definitions contain descriptions which lack "mathematical certainty," such precision and definiteness is not essential to constitutionality. *See Dandridge*, 397 U.S. at 485, 90 S.Ct. at 1161; *see also Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972).

The Court concludes that Ordinance 87–6 sets forth a meaningful standard which can be used to identify those dogs subject to its prohibition and that the Pit Bull has certain phenotypical characteristics in its appearance which allows this breed of dog to be identifiable.

## V. *Equal Protection—Under Inclusiveness*

The equal protection laws under the 14th Amendment to the United States Constitution and under Article I, Section 2 of the Ohio Constitution guarantee that classifications imposed by law will not be used to arbitrarily burden a group of people. As Ordinance 87–6 does not classify people based on suspect categories and does not affect fundamental rights, it is entitled to minimal scrutiny under the equal protection clause. This analysis requires that there is a rational basis for the specific classification and a reasonable relationship between that classification and the purpose of the law. *McGowan*, 366 U.S. at 425, 81 S.Ct. at 1104; *Sage Stores Co. v. Kansas*, 323 U.S. 32, 35, 65 S.Ct. 9, 10, 89 L.Ed. 25 (1944); *Atchison, Topeka and Santa Fe R.R. v. Vosburg*, 238 U.S. 56, 59, 35 S.Ct. 675, 676, 59 L.Ed. 1119 (1915).

A legislative classification under this level of scrutiny must be sustained unless it is "patently arbitrary" and bears no rational relationship to a legitimate governmental interest. *Frontiero v. Richardson*, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973); *Felske v. Daugherty*, 64 Ohio St.2d 89, 92, 413 N.E.2d 809 (1980).

In a "rational basis" equal protection analysis, the United States Supreme Court has stated:

The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only con-

clude that the legislature's actions were irrational.

*Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979).

The United States Supreme Court explained that courts must give legislatures great leeway in creating classifications:

The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative. The legislature may select one phase of one field and apply a remedy there, neglecting the others.

*Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); *see also South Carolina v. Katzenbach,* 383 U.S. 301, 331, 86 S.Ct. 803, 820, 15 L.Ed.2d 769 (1966); *see also Semler v. Oregon State Board of Dental Examiners,* 294 U.S. 608, 610, 55 S.Ct. 570, 571, 79 L.Ed. 1086 (1935).

As the United States Supreme Court explained:

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)]. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 68–70 [33 S.Ct. 441, 443, 57 L.Ed. 730 (1913)]. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland,* 366 U.S. 420, 426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)].

*Dandridge,* 397 U.S. at 485, 90 S.Ct. at 1161. "[T]he Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy." *Id.* at 486, 90 S.Ct. at 1162.

Several recent cases have upheld the right of the legislative body to define and regulate Pit Bulls. In *Starkey v. Township of Chester,* 628 F.Supp. 196, 197 (E.D. Pa.1986), a federal district court rejected the contention that a law regulating only Pit Bulls violated equal protection: "The Township does not have to regulate every dangerous animal at the same time in the same way to pass constitutional muster." Likewise, a New Mexico state appeals court upheld a law which prohibited the ownership of American Pit Bull Terriers: "To satisfy equal protection tenets, it is not necessary that the Village address all potential threats from all breeds of dog; instead, the Village was entitled to address a phase of the problem that was of acute concern." *Garcia v. Village of Tijeras,* 108 N.M. 116, 767 P.2d 355, *cert. denied* 107 N.M. 785, 765 P.2d 758 (1988); *see also State v. Peters,* 534 So.2d 760 (Fla.App. 1988), review den. 542 So.2d 1334 (Fla. 1989); *City of Lima v. McFadden,* (3rd App.D., Allen Cty., Ohio, June 30, 1986).

■ Plaintiff argues that the Ordinance is unconstitutional because it irrationally distinguishes between Pit Bulls and other breeds of dogs and that it fails to include other specific breeds of dogs which could be grouped into the dangerous Pit Bull category. The Court finds this argument to be without merit since the constitutional guarantee of equal protection of the laws does not guarantee that all dog owners will be treated alike, but that all dog owners of defined Pit Bulls will be treated alike.

■ The evidence presented at trial indicates that the Village of South Point Council chose to deal with the unique threat of harm posed by the Pit Bulls which were kept in the Village. The fact that council decided to take preventative

measures against this one specific breed of dog and not against other breeds is reasonable in light of the types and numbers of the various breeds of dogs in the Village and in light of the type of threat that Pit Bulls pose. The decision not to name or ban other potentially dangerous breeds does not render the law constitutionally defective.

Also, there was substantial evidence that Pit Bulls presented a special threat to the safety of the residents of the Village of South Point over and above that presented by any other breed of dogs which is kept there. Attacks by Pit Bulls, as opposed to dog attacks in general, were of acute concern to the Village.

Plaintiff has not proven to this Court by clear and convincing evidence that the Village of South Point Council's distinction was arbitrary or irrational.

## VI. *Overbreadth*

Plaintiff argues that Ordinance 87–6 is overly broad because there is a danger of misidentification since other dogs have similar phenotypical characteristics but are not within the statutory definition and, therefore, similar dogs will be subject to enforcement of the criminal ordinance. Plaintiff further maintains that the Ordinance is unconstitutional since the decision as to whether a dog falls within the parameters of the ordinance is placed upon a dog warden or veterinarian or, possibly, a police officer, all of whom have no accurate guideline available to know with some certainty that a particular individual is subject to the criminal penalty.

For the reasons stated in the section of this Order concerning vagueness, and for the basic reason that one cannot be convicted of a criminal offense without having been proven guilty of each element of the offense beyond a reasonable doubt, the Court concludes that the Ordinance is not overbroad as drawn. While identification of a Pit Bull may be difficult in some situations, there are other methods to determine with sufficient certainty whether a dog is a Pit Bull within the meaning of the

Ordinance to survive the overbreadth challenge.

Further, the Court concludes that the difficulties in enforcement and the burdens placed on a prospective or current owner of a dog which may be a Pit Bull do not present unique constitutional problems, but are merely issues and obligations which are incidental to most criminal ordinances.

## VII. *Conclusion*

Based upon the foregoing, this Court concludes that the enactment of Ordinance 87–6 of the Village of South Point was a valid exercise of the Village's police power and is entitled to a strong presumption of constitutionality. Therefore, if there exists any conceivable set of facts under which the legislative classification furthered a legitimate legislative objective, this Court must uphold it. *McGowan,* 366 U.S. at 425–26, 81 S.Ct. at 1104–1105; *Denicola v. Providence Hospital,* 57 Ohio St.2d 115, 387 N.E.2d 231 (1979); *Leis v. Cleveland R. Co.,* 101 Ohio St. 162, 128 N.E. 73 (1920).

Based upon the substantial evidence presented at trial, notwithstanding plaintiff's evidence and arguments to the contrary, this Court concludes that Ordinance 87–6 is rationally related to the safety and welfare of the residents of the Village of South Point. The Court finds that the Ordinance is a reasonable response to the special threat presented by the Pit Bull dog breed based upon their phenotypical characteristics and the traits which have been bred into the breed.

This Court finds that Ordinance 87–6 is not unconstitutionally vague, underinclusive or overbroad and, therefore, concludes that the Ordinance does not violate any constitutional provision.

The United States Supreme Court has cautioned that we cannot decide today that the Village of South Point's Ordinance is wise, that it best fulfills the relevant social and economic objectives which the Village might ideally espouse, or that a more just and humane system could not be devised; certainly, conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure and

the United States Constitution does not empower this Court to second guess state officials charged with the difficult responsibility of protecting the safety and welfare of its public. *See Dandridge*, 397 U.S. at 487, 90 S.Ct. at 1162.

Upon consideration of the evidence presented at trial, the pleadings, exhibits, memoranda, and arguments of counsel, and upon application of the controlling authority, this Court is required to uphold the constitutionality of the Village of South Point's Ordinance 87–6.

## ORDER

Pursuant to the trial of this matter and in accordance with the Finding of Fact and Conclusions of Law herein, the Court hereby GRANTS judgment in favor of defendants, the Village of South Point, William Gaskin, Carl Vance, Patrick Leighty, Richard Meyers and Jim Treadway, and hereby ORDERS the Clerk of Courts to enter final judgment accordingly.

IT IS SO ORDERED.