The **PEOPLE of the State of Colorado,**
Plaintiff-Appellee,

v.

**Kenneth Eugene MILTON and One 1973 Chevrolet Suburban Automobile, Blue and White Color, Vin. # CCQ63F168646, Defendants-Appellants.**

No. 85SA26.

Supreme Court of Colorado,
En Banc.

Feb. 23, 1987.

Duane Woodard, Atty. Gen. Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Dolores Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Jeffrey K. Holmes, Denver, for defendants-appellants.

QUINN, Chief Justice.

Kenneth Eugene Milton, the defendant in the trial court, appeals from a judgment ordering the forfeiture of a station wagon which Milton owned and used in the commission of a robbery. He challenges the judgment on several grounds: that the Colorado Abatement of Public Nuisance Statute (Public Nuisance Statute), §§ 16–13–301 to –316, 8A C.R.S. (1986), pursuant to which his vehicle was forfeited, is unconstitutional; that the trial court erred in construing the Public Nuisance Statute to allow the forfeiture of the entire vehicle rather than its contents only; that because the People failed to file a trial data certificate, the trial court should not have allowed the People's witnesses to testify at trial; and that the People's evidence was insufficient to support the judgment.[1] Finding his claims to be without merit, we affirm the judgment.

## I.

Section 16–13–303(1)(i) of the Public Nuisance Statute defines a class 1 public nuisance to include a vehicle used in the commission of a felony. Section 16–13–303(2) states that a vehicle which is determined to be a public nuisance is "subject to seizure, confiscation, and forfeiture ... unless the possession of said property is not unlawful and the owner of said property was not a party to the creation of the nuisance and would suffer undue hardship by sale, confiscation, or destruction of the property." If the court determines that a seized vehicle is to be forfeited, the vehicle must be disposed of in accordance with the provisions of section 16–13–311(3), which, as pertinent here, require the forfeited vehicle either to be sold, with the sale proceeds applied as set forth in that section,[2] or delivered to the seizing agency if the court finds that the agency can make use of the vehicle.

> (3)(a) Except as otherwise provided in this section, the court may order any such property sold by the sheriff in the manner provided for sales on execution. The proceeds of the sale shall be applied as follows:
> (I) To the fees and costs of removal and sale;

[1.] Milton's case was originally filed in the court of appeals. Since the appeal included a challenge to the constitutionality of the Public Nuisance Statute, the court of appeals referred the case to this court pursuant to section 13–4–110(1)(a), 6 C.R.S. (1973), and we accepted jurisdiction.

[2.] Section 16–13–311(3), 8A C.R.S. (1986), states:

On November 19, 1981, the People filed a complaint in the Adams County District Court, alleging that Kenneth Eugene Milton and Paul Robert Campbell were co-owners of a 1973 Chevrolet Suburban motor vehicle and used the vehicle to commit an aggravated robbery in Adams County on September 17, 1981.[3] The People sought to have the vehicle adjudged a class 1 public nuisance and forfeited to the state of Colorado. Milton by answer admitted an ownership interest in the vehicle, denied having used the vehicle in the commission of aggravated robbery, and alleged that the forfeiture provisions of the Public Nuisance Statute were in violation of double jeopardy prohibitions of the United States and Colorado Constitutions, U.S. Const. amend. V and XIV; Colo. Const. art. II, § 18, the Colorado constitutional prohibition against forfeiture of estate, Colo. Const. art. II, § 9, and his constitutional and statutory rights to a speedy trial, Colo. Const. art. II, § 16; § 18-1-405, 8A C.R.S. (1986).

The case against Milton was tried to the court on August 26, 1983. Before testimony was taken, the court heard and denied Milton's constitutional challenges. The court also denied Milton's motion to prohibit the People from calling any witnesses due to their failure to file a trial data certificate in accordance with C.R.C.P. 121, section 1-18(1)(a). During the hearing on

the motion Milton's attorney acknowledged that the district attorney had provided him with the People's entire file a week earlier and that he (Milton's attorney) had made copies of approximately 200 pages of discoverable material.

At the commencement of the trial the court, pursuant to the People's request and based on the contents of the file in the Adams County District Court criminal action previously brought against Milton, took judicial notice of the following facts: that on February 16, 1983, Milton pled guilty to robbery, § 18-4-301, 8B C.R.S. (1986), by taking money from the person of Mary Kathryn Whittenmore on September 17, 1981, in Adams County, Colorado; that the charge of aggravated robbery was dismissed pursuant to a plea agreement; and that Milton was sentenced to a term of four years and was later released to federal authorities. The People then called four witnesses, including the victim of the robbery, Mary Kathryn Whittenmore. She testified that on September 17, 1981, she was working in Majestic Savings and Loan on East Colfax Avenue in Adams County, when Milton entered the bank with a gun and robbed her of approximately $600. Other witnesses also testified to Milton's use of the 1973 Chevrolet Suburban motor vehicle in driving to and fleeing from the scene of the robbery, and to his arrest a short time later while he was in the vehicle

(II) To the allowance and cost of closing and keeping closed the building or place where the property was seized pursuant to the provisions of this part 3;

(III) To the payment of the plaintiff's costs in such action; and

(IV) The balance, if any, or any portion thereof not otherwise distributed pursuant to this subparagraph (IV), to the general fund of the state. Instead of being deposited in the general fund, such balance or any portion thereof may be delivered, upon order of the court, as follows:

(A) To the seizing agency if the court finds that the proceeds can be used by such agency;

(B) To any person who suffers bodily injury or property damage as a result of the action which constitutes the nuisance, if said person petitions the court therefor.

(b) In lieu of ordering the sale of such property, the court may, if it finds that it can be used by the agency which seized it, order it delivered to the agency for such use.

3. Although the other defendant, Paul Robert Campbell, filed an answer to the complaint, he did not participate in the trial or the appeal of this case. The only other reference in the transcript to him is the following exchange at the trial between the court and the district attorney:

THE COURT: [W]e have got a civil summons and we have got an answer here by Paul Robert Campbell. He is out of this; is that right?

MR. BERNARD [District Attorney]: He is not going to be here and his interest in this case is not before the Court today.

and in possession of the stolen money. Milton's motion for a judgment of dismissal at the close of the People's evidence was denied, and he offered no evidence in defense of the forfeiture action.

The trial court found that Milton had committed robbery on September 17, 1981, when he took money belonging to Majestic Savings and Loan from one of Majestic's employees; that the Chevrolet Suburban motor vehicle, which Milton had used in the commission of and escape from the robbery, was an instrumentality of the robbery and was intimately connected to it; and that the People had proven all of the elements of the forfeiture action. The court concluded that the vehicle was a class 1 public nuisance and ordered it forfeited for delivery to the Aurora Police Department for its use. Milton's motion for a new trial was denied, and this appeal followed.

## II.

Milton raises three constitutional challenges to the order of forfeiture entered pursuant to the Public Nuisance Statute. We will consider each argument separately.

## A.

Milton claims that he was subjected to two separate prosecutions and two punishments—imprisonment on his guilty plea and forfeiture of his automobile—in violation of the United States and Colorado constitutional prohibitions against twice being put in jeopardy for the same offense. U.S. Const. amend. V and XIV; Colo. Const. art. II, § 18.[4] We find no merit in his claim.

■ The double jeopardy provisions which proscribe multiple punishments for the same offense apply only to criminal or quasi-criminal proceedings, *see United States v. One Assortment of 89 Firearms,*

465 U.S. 354, 362, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984); *One Lot Emerald Cut Stones and One Ring v. United States,* 409 U.S. 232, 235–36, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972); *Palmer v. A.H. Robins Co.,* 684 P.2d 187, 217 (Colo.1984), and thus can apply here only if a forfeiture proceeding brought under the Colorado Public Nuisance Statute is essentially criminal in nature. We are satisfied that a forfeiture action under the Public Nuisance Statute cannot be so characterized.

■ The United States Supreme Court has adopted a two-pronged test to determine whether a statutory forfeiture proceeding is essentially criminal in character and thus subject to the Double Jeopardy Clause of the United States Constitution: first, whether Congress expressly or impliedly indicated a preference for criminal or civil categorization; and second, in the event Congress did indicate an intention to treat a forfeiture proceeding as civil, whether the statutory scheme is so punitive either in purpose or effect as to negate congressional intention. *One Assortment of 89 Firearms,* 465 U.S. 354, 362–66, 104 S.Ct. at 1104–07.

In *One Assortment of 89 Firearms,* the Court held that a gun-owner's acquittal on criminal charges involving firearms did not preclude a subsequent forfeiture proceeding against those same firearms under 18 U.S.C. § 924(d) (1982). Applying the two-pronged test, the Court initially concluded that the design of the statute and the procedural mechanism for enforcement clearly indicated Congress's intent to treat the forfeiture action as a remedial civil action. *Id.* at 363, 104 S.Ct. at 1105. With respect to the second prong of the test, the Court observed that " '[o]nly the clearest proof' that the purpose and effect of the forfeiture are punitive will suffice to override Congress' manifest preference for a civil

sanction" and that such proof was lacking in the statutory scheme under review. *Id.* at 365–66, 104 S.Ct. at 1106–07.[5] We adopt this same two-pronged test under the Colorado Double Jeopardy Clause.

■ The application of this test to Colorado's Public Nuisance Statute convinces us that forfeiture actions pursuant to the Colorado statutory scheme are essentially civil in nature. We initially note that the legislative terminology employed in the statute manifests a clear intent to treat a forfeiture action as a civil proceeding. The legislative declaration of policy in section 16–13–302 states that "every public nuisance shall be restrained, prevented, abated, and perpetually enjoined," thereby indicating that the primary purpose of the forfeiture action is to abate the public nuisance. The civil character of the statutory scheme is further demonstrated by section 16–13–307(3), which states that "[e]xcept as otherwise provided in [the statute], the practice and procedure in an action to abate a public nuisance shall be governed by the Colorado rules of civil procedure." In like manner, section 16–13–307(5) states that the summons for an action to abate a public nuisance shall be issued and served "as in civil cases," except that a copy of the complaint and any orders issued by the court at the time of filing "shall be served with the summons."

Furthermore, we find nothing in the statutory scheme that is so punitive in either purpose or effect as to negate the legislature's expressed intent to treat an action to abate a public nuisance as a civil proceeding. While the forfeiture of the offending property is not without burdensome consequences to the owner of the property, this sanction is primarily directed toward achieving the salutary goal of preventing and terminating the harmful use of the property. In addition to imposing no penalties or fines directly on the owner of the offending property, the statute permits an innocent owner to defend against the forfeiture proceeding by showing that the possession of the property "is not unlawful" and that he "was not a party to the creation of the nuisance and would suffer undue hardship by sale, confiscation, or destruction of the property." § 16–13–303(2), 8A C.R.S. (1986).

■ The fact that the legislature has defined a public nuisance to include every vehicle "[u]sed in the commission of any felony not otherwise included in this section," § 16–13–303(1)(i), 8A C.R.S. (1986), does not transform the forfeiture proceeding into a criminal case. The legislature may properly impose a civil sanction with respect to conduct that may also be punishable as a crime. *One Assortment of 89 Firearms*, 465 U.S. at 365–66, 104 S.Ct. at 1106–07; *One Lot Emerald Cut Stones and One Ring v. U.S.*, 409 U.S. 232, 235–36, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972); *Gregg v. People*, 65 Colo. 390, 396–97, 176 P. 483, 485 (1918). We are thus satisfied that an action pursuant to the Public Nuisance Statute is a civil proceeding and that the forfeiture action in this case did not violate Milton's constitutional guarantees against multiple punishment under the Double Jeopardy Clauses of the United States and Colorado Constitutions.

---

5. In *One Assortment of 89 Firearms*, the court cited with approval its decision in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963), which set forth the following considerations, *not intended to be exhaustive*, in determining whether a particular statute was actually intended by Congress to be penal in character:

Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.

465 U.S. at 365 n. 7, 104 S.Ct. at 1106 n. 7.

### B.

Milton next claims that the forfeiture provisions of the Public Nuisance Statute constitute a "forfeiture of estate" in violation of article II, section 9 of the Colorado Constitution, which states as follows:

Treason against the state can consist only in levying war against it or in adhering to its enemies, giving them aid and comfort; no person can be convicted of treason, unless on the testimony of two witnesses to the same overt act, or on his confession in open court; no person can be attainted of treason or felony by the general assembly; no conviction can work corruption of blood or forfeiture of estate; the estates of such persons as may destroy their own lives shall descend or vest as in cases of natural death.

We are not aware of any Colorado decision construing the "forfeiture of estate" provision, and none has been called to our attention by the parties. Although the People contend that article II, section 9 applies only to treasonous offenses, we cannot dismiss Milton's argument so summarily, since the third clause of the constitutional provision in question states that "no person can be attainted of treason *or felony* by the general assembly" and the fourth clause states that *"no conviction can work corruption of blood or forfeiture"* (emphasis added).

Drawing on analogous federal precedent, we are satisfied that the Colorado constitutional prohibition against "forfeiture of estate" does not proscribe an order of forfeiture entered under the Public Nuisance Statute. Article III, § 3 of the United States Constitution states that "the congress shall have power to declare the punishment of treason; but no attainder of treason shall work corruption of blood or forfeiture, except during the life of the person attainted." This provision was supplemented by the first congress, which enacted 1 Stat. 112, 117 (1790), codified as amended at 18 U.S.C. § 3563 (1982), which

reads: "No conviction or judgment shall work corruption of blood or any forfeiture of estate." The historical background of "corruption of blood" and "forfeiture of estate" was examined by the Fourth Circuit Court of Appeals in *United States v. Grande*, 620 F.2d 1026 (4th Cir.), *cert. denied*, 449 U.S. 830, 101 S.Ct. 98, 66 L.Ed.2d 35 and 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 146 (1980). The defendant in that case claimed that 18 U.S.C. § 1963(a) (1982), which mandates the forfeiture of property acquired through racketeering activity, constituted a forfeiture of estate in violation of article III, § 3 of the United States Constitution and 18 U.S.C. § 3563. In rejecting this claim, the court observed that the purpose of Article III, § 3 was to prohibit certain practices countenanced by the English law of the late 1700's, whereby a conviction of treason or some other serious felony caused the complete forfeiture of all the defendant's real and personal property and worked a "corruption of blood" so that nothing could pass by inheritance through the defendant's line. Nothing in the historical background of these terms, in the court's view, suggested

that either article III or the 1790 statute was intended to prohibit anything other than corruption of blood or forfeiture of estate as imposed at common law. To the contrary, it is clear that both article III and the subsequent statute contemplated broad forfeitures incident to attainder as a traitor or felon, *i.e.*, total disinheritance of one's heirs or those who would be one's heirs and forfeiture of *all* of one's property and estate.

*Id.* at 1039. The court accordingly held that the forfeiture of property acquired through racketeering activity, as authorized by 18 U.S.C. § 1963(a), did not run afoul of constitutional or statutory proscriptions against "forfeiture of estate."

■ Since the terms "corruption of blood" and "forfeiture of estate" had a special meaning at common law and were so used in the federal constitution and fed-

eral statute of 1790, we know of no reason why we should impute to these terms any different meaning in construing the prohibitions against "corruption of blood" and "forfeiture of estate" in the Colorado Constitution. Thus, even if article II, section 9 of the Colorado Constitution is read as dealing with convictions for crimes other than treason, we are satisfied under the reasoning of *Grande* that a forfeiture action initiated pursuant to the Colorado Public Nuisance Statute does not constitute a "forfeiture of estate" in violation of the Colorado Constitution.

## C.

Milton also argues that since this case was not tried until approximately twenty-one months after the filing of the People's complaint, the order of forfeiture constitutes a denial of his constitutional and statutory rights to a speedy trial. Colo. Const. art. II, § 16; § 18–1–405, 8B C.R.S. (1986). We find his argument devoid of merit.

■ The constitutional and statutory rights relied on by Milton apply only to criminal prosecutions. Milton's argument thus proceeds from the faulty assumption that an action of forfeiture under the Public Nuisance Statute is a criminal proceeding. Since an action for abatement of a public nuisance is civil in nature, *see* Part II A, *supra*, the constitutional and statutory speedy trial provisions applicable to a criminal prosecution have no application to this case.

## III.

Milton next claims that the trial court erred in entering its order of forfeiture since, in his view, section 16–13–303 of the Public Nuisance Statute provides that only the contents of a vehicle, and not the vehicle itself, can be forfeited. We reject Milton's argument as contrary to the plain terms of the statute.

■ Section 16–13–303(1)(i) defines a class 1 public nuisance to include any ve-

hicle "[u]sed in the commission of any felony not otherwise included in this section." Subsection (2) of section 16–13–303 states, as pertinent here, that any vehicle "used in conducting, maintaining, aiding, or abetting any class 1 public nuisance" is subject to "seizure, confiscation, and forfeiture." These statutory provisions leave no doubt that a vehicle used in the commission of a robbery is a class 1 public nuisance subject to forfeiture. We therefore have no hesitation in concluding that Milton's entire vehicle, not just its contents, was subject to forfeiture.

## IV.

Milton contends that the trial court erred in allowing the People's witnesses to testify over his objection, since the People failed to file a trial data certificate as required by C.R.C.P. 121, section 1–18. Again, we are unpersuaded by his argument.

C.R.C.P. 121, section 1–18(1), states in pertinent part as follows:

1. Cases Not Pre-tried. In cases [other than juvenile, mental health, and marriage dissolution proceedings] which are not pre-tried, the following mandatory requirements shall apply:

(a) Trial Data Certificate. In cases not pre-tried, no later than 45 days prior to the date set for trial, each party shall file with the courtroom clerk and serve on each other party the following enumerated disclosures and materials by way of a TRIAL DATA CERTIFICATE. This document shall state the name of the party or parties on whose behalf it is presented and briefly set forth the nature of the case and the following matters under the following captions and in the following order:

\* \* \* \* \* \*

V. Witnesses. The name, address, and telephone number of any witness or party whom the party may call at trial, together with a summary of such per-

son's testimony or an attached copy of any statement of such person.

C.R.C.P. 121, section 1–18(1)(d), provides that "[i]n the event of noncompliance with this rule, the court *may impose* any appropriate sanction therefor" (emphasis added).

 Considerable discretion is vested in the trial court to determine whether noncompliance with mandatory pretrial procedures justifies the imposition of sanctions against the noncomplying party. *Estate of Gardner v. First National Bank of Denver*, 31 Colo.App. 361, 365, 505 P.2d 50, 52 (1972). To say that a court has discretion in resolving this issue means that it has the power to choose between two or more courses of action and is therefore not bound in all cases to select one over the other. *See Buckmiller v. Safeway Stores, Inc.*, 727 P.2d 1112, 1115 (Colo.1986). While the trial court in this case certainly had the authority to prohibit the People's witnesses from testifying in the People's case in chief for noncompliance with the pretrial procedures mandated by C.R.C.P. 121, section 1–18, *see Bigler v. Richards*, 151 Colo. 325, 377 P.2d 552 (1963), the permissive "may" of section 1–18(1)(d) makes it abundantly clear that the court's decision not to impose any sanction in this case should not be overturned unless such decision amounted to an abuse of discretion. We may properly conclude that the trial court abused its discretion only if we can say with fair assurance that, based on the particular circumstances confronting the court, the decision not to prohibit the People's witnesses from testifying was manifestly arbitrary, unreasonable, or unfair. *See generally Hartford-Empire Co. v. Obear Nester Glass Co.*, 95 F.2d 414, 417 (8th Cir.1938); *Van De Vegt v. Board of County Commissioners*, 98 Colo. 161, 166–67, 55 P.2d 703, 705 (1936).

 We are satisfied in this case that the trial court did not abuse its discretion in failing to exclude the testimony of the People's witnesses. In the first place, the People called only those witnesses who had been formally endorsed as witnesses in Milton's criminal trial; and Milton, even without a trial data certificate, was apprised of the identity of those witnesses and the substance of their testimony. Moreover, the record shows that Milton's counsel examined the People's file during the week prior to the commencement of trial and copied some 200 pages of discoverable material from the file. Finally, there is nothing in the record to support the inference that Milton was in any way prejudiced by the People's failure to file the trial data certificate.[6]

## V.

Milton's final claim is that the People's evidence was insufficient to support the judgment of forfeiture. We again disagree with his assertion.

 Since a forfeiture action is a civil proceeding, the People bear the burden of proving the allegations of the complaint by a preponderance of the evidence. § 13–25–127(1), 6 C.R.S. (1973). In this case the trial court found that the People had established all the elements of their case "not only ... by a preponderance of the evidence, but ... overwhelmingly."

 There is ample evidence in the record to support the trial court's order of forfeiture. The trial court took judicial notice that Milton had pled guilty to the robbery out of which the forfeiture action arose, and the victim of the crime identified Milton as the robber. The People also introduced other testimony which, taken as a

6. Although we cannot under these circumstances attribute an abuse of discretion to the trial court in allowing the People's witnesses to testify, we hasten to add that our decision should in no way be interpreted as condoning noncompliance with the practice standards of C.R.C.P. 121.

We recognize that Milton also failed to file a trial data certificate. Milton's noncompliance, however, does not serve as an excuse for the People's noncompliance, especially since Milton offered no evidence whatever at trial.

whole, proved that Milton used the blue and white Chevrolet Suburban motor vehicle to drive to and to escape from the scene of the robbery. The People's evidence established that the vehicle in question was a class 1 public nuisance and was thus subject to forfeiture.

The judgment is affirmed.