The COLORADO DOG FANCIERS, INC., the American Dog Owners Association, the United Kennel Club, Ken Lee, Colorado Humane Society, Inc., Colorado American Pit Bull Terrier Breeders Association, Inc., Colorado Dog Academy, Inc., Dale and Sue Ellen Fresenberg, Pat Andrasen, Dr. William A. Suro, Russell L. Lopez, and Ambrose and Rama Mallett, Plaintiffs–Appellants and Cross–Appellees,

v.

The CITY AND COUNTY OF DENVER, Acting By and Through its CITY COUNCIL, John A. Fairman, Manager/CEO of the Department of Health and Hospitals for the City and County of Denver, and Federico Peña, Mayor for the City and County of Denver, Defendants–Appellees and Cross–Appellants.

No. 90SA342.

Supreme Court of Colorado,
En Banc.

Nov. 12, 1991.

Ankele, Icenogle, Slattery & Norton, P.C., T. Edward Icenogle, George Bentley, Denver, for plaintiffs-appellants and cross-appellees.

Daniel E. Muse, City Atty., James C. Thomas, Thomas S. Moe, Jr., Assistant City Attys., Denver, for defendants-appellees and cross-appellants.

Justice ERICKSON delivered the Opinion of the Court.

The plaintiffs, dog owners and related canine and humane associations (dog owners), filed a complaint in the Denver District Court against the defendant, City and County of Denver (city), seeking both a declaratory judgment on the constitutionality of the "Pit Bulls Prohibited" ordinance, Denver, Colo., Rev.Mun.Code § 8-55 (1989), and injunctive relief to prevent enforcement. The dog owners also requested damages under 42 U.S.C. § 1983 (1988) and attorneys' fees and costs. This appeal is taken from the district court's order which held that section 8-55, as construed by the court, was constitutional. The order also denied the dog owners an injunction to prevent enforcement of the ordinance, denied the dog owners' motion for attorneys' fees and costs, and dismissed the section 1983 actions with prejudice. *Colorado Dog Fanciers v. City & County of Denver,* Nos. 89CV11714 & 89CV12348 (Denver Dist.Ct. June 28, 1990). On appeal, the dog owners contend that section 8-55 is unconstitutional. On cross-appeal, the city contends that section 8-55 is constitutional as enacted and that the trial court erred in judicially modifying the ordinance. Since the constitutionality of an ordinance is in issue, jurisdiction lies in the supreme court. *See* § 13-4-102(1)(b), 6A C.R.S. (1987); *see, e.g., High Gear & Toke Shop v. Beacom,* 689 P.2d 624 (Colo.1984). We affirm in part, reverse in part, and remand this action and the motion for attorneys' fees and costs to the trial court for resolution consistent with this opinion.

### I

On July 31, 1989, the City Council for the City and County of Denver enacted section 8-55, the "Pit Bulls Prohibited" ordinance. The ordinance, which became effective on August 7, 1989, makes it unlawful for any person to "own, possess, keep, exercise control over, maintain, harbor, transport, or sell within the City any pit bull." § 8-55(a). The ordinance permits an owner of a previously licensed pit bull to keep the dog only if the owner (1) annually renews a "pit bull license" which must have been obtained by November 1, 1989, (2) proves that the dog has been spayed or neutered and has been vaccinated against rabies, (3) keeps the dog confined or securely leashed and muzzled, and (4) maintains $100,000 in liability insurance. § 8-55(d). Section 8-55(b)(2) defines a pit bull as:

Any dog that is an American Pit Bull Terrier, American Staffordshire Terrier, Staffordshire Bull Terrier, or any dog displaying a majority of physical traits of

any one or more of the above breeds, or any dog exhibiting those distinguishing characteristics which substantially conform to the standards established by the American Kennel Club or United Kennel Club for any of the above breeds. The A.K.C. and U.K.C. standards for the above breeds are on file in the office of the Clerk and Recorder, Ex–Officio Clerk, of the City and County of Denver, at City Clerk Filing No. 89457.

The manager of health and hospitals is authorized by section 8–55(e) to immediately impound any pit bull found within the city if the dog's owner is deemed not to be in compliance with the ordinance. If the owner of an impounded dog disputes the classification of the dog as a pit bull, the owner may file a petition for a hearing. § 8–55(f). The owner is then granted a hearing before the manager of health and hospitals or before a hearing officer designated by the manager. At the hearing, the dog owner bears the "risk of nonpersuasion." The manager or hearing officer makes the final determination whether the dog is a pit bull. If the dog is found to be a pit bull, it will be destroyed unless the owner pays the costs of impoundment and agrees to permanently remove the animal from Denver. *Id.*

The trial court found that placing the risk of nonpersuasion on the dog owner was a denial of procedural due process of law and construed the ordinance to require that "where a dog's breed is in dispute, the burden is on the City, not the dog owner, to prove beyond a reasonable doubt that the dog is a pit bull dog regulated by the ordinance." The trial court also determined that since the vast majority of Denver citizens do not license their dogs, there was no rational basis for prohibiting owners of unlicensed pit bulls from applying for pit bull licenses. As a result, the trial court severed the portion of the ordinance that limited the pit bull licensing procedure to owners of previously licensed pit bulls. In addition, the trial court imposed a notice requirement and required a pre-impoundment hearing. The city was ordered to give reasonable notice within thirty days to citizens affected by the ordinance. Finally,

the trial court gave dog owners 120 days from the date of its order to comply with the ordinance.

## II

The dog owners claim that, under the fifth and fourteenth amendments to the United States Constitution, the ordinance, both facially and as applied to them, violates their rights to procedural and substantive due process and equal protection, is unconstitutionally vague, and constitutes a taking of private property. In addition, they claim the trial court committed reversible error by rewriting and amending the ordinance. The city responds that the ordinance is constitutional on its face and, on cross-appeal, contends that the trial court unnecessarily modified the ordinance.

Legislation designed to protect the public's health and safety is entitled to a presumption of constitutionality. *People v. Unruh,* 713 P.2d 370, 373 (Colo.), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986); *People v. Riley,* 708 P.2d 1359, 1362 (Colo.1985). A party challenging a public safety law must prove the unconstitutionality of a legislative ordinance beyond a reasonable doubt. *Riley,* 708 P.2d at 1362; *High Gear & Toke Shop v. Beacom,* 689 P.2d at 630.

Section 8–55 is both civil and criminal. To the extent that it provides regulations for the licensing, impoundment, and destruction of pit bulls, it is a regulatory measure. On the other hand, section 1–13 provides that "whenever any section of this Code or any section of a rule or regulation promulgated hereunder requires, prohibits or declares to be unlawful the doing of any act, *any violation of such section is hereby declared to be a criminal violation.*" Denver, Colo., Rev.Mun.Code § 1–13 (Supp. 1990) (emphasis added). Section 1–13 also provides for criminal penalties:

If no definite fine or penalty is provided for a violation, any person who shall be convicted of a violation of any such section shall, for each offense, be fined in a sum not more than nine hundred ninety-nine dollars ($999.00) or imprisoned not

to exceed one hundred eighty (180) days, or both so fined and imprisoned. Each day an offense and violation continues shall constitute a separate offense and violation.

*Id.* Violations of the ordinance are criminal violations under section 1–13. Section 1–13 does not affect the civil character of the regulatory provisions. To review the constitutionality of the ordinance, we must consider whether the provisions of the sections at issue are civil or criminal.

### III

### *Procedural Due Process*

The dog owners contend that the ordinance is fundamentally unfair and thus violates procedural due process. In support of this contention, the dog owners point to the trial court's interpretation of the ordinance to include a change in the burden of proof and to provide notice and a pre-impoundment hearing. We hold that the ordinance, as applied consistent with this opinion, is not fundamentally unfair. Any violation of procedural due process, as the ordinance was interpreted prior to this opinion, is properly the subject of the dog owners' underlying claims and should be addressed on remand to the trial court. However, since the trial court made changes to the ordinance that relate to procedural due process, we now address the trial court's severance of the "risk of nonpersuasion" language and its imposition of a pre-impoundment hearing.

### A

The trial court determined that the city ordinance improperly placed the "risk of nonpersuasion" on the owner of an impounded dog to prove that the dog is not a pit bull. As a result, the court severed that provision and construed the ordinance to place the burden on the city to prove beyond a reasonable doubt that the dog in question is a pit bull as defined by the ordinance. We agree with the trial court's construction with regard to criminal violations under the ordinance, but we do not agree that the city must assume the burden of proof beyond a reasonable doubt at the civil or regulatory stage of the proceedings.

Section 8–55(f) provides that a dog owner demanding a hearing "shall bear the risk of nonpersuasion." While the city may have intended this provision to place the burden of proof on the owner of an impounded dog at an administrative hearing at which the dog's breed is in dispute, the plain meaning of the provision is merely that regardless of the placement of the burden, the owner bears the "risk" that the hearing officer will be unconvinced. *See, e.g.,* CRE 301 (although a presumption imposes the burden of going forward to rebut the presumption upon the party against whom it is directed, the risk of nonpersuasion remains upon the party upon whom it was originally cast). Even if we were to equate the risk allocation with a formal placement of the burden of proof on the dog owner, the term "risk of nonpersuasion" lacks a standard of proof. Because the ordinance fails to apprise dog owners of the quantum of evidence necessary to prevail at a section 8–55(f) hearing, it may encourage arbitrary enforcement and is thus constitutionally infirm. *See Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (invalidating a criminal statute that required loiterers to provide "credible and reliable" identification). As the United States Supreme Court said in *Lawson,* "Although due process does not require 'impossible standards' of clarity, this is not a case where further precision in the statutory language is either impossible or impractical." 461 U.S. at 361, 103 S.Ct. at 1860. Because the statutory language of the ordinance fails to meet constitutional scrutiny, we uphold the trial court's severance of the offending provision.[1]

---

**1.** Section 1–12 of the Denver Revised Municipal Code, entitled "Severability," states:

If any provision of this Code or any provision of any rule or regulation lawfully promulgated hereunder or any application of this ordinance or rule or regulation promulgated hereunder to any person or circumstance is held invalid or inoperative, such invalidity or inoperativeness shall not affect other provisions or applications of the Code or rules or regula-

After severance, however, we are left with an ordinance that implicates constitutional due process values since it lacks any burden of proof. We have consistently held that courts should interpret statutes to avoid a construction that might contravene constitutional standards. *Forbes v. Poudre School Dist. R–1*, 791 P.2d 675, 680 (Colo.1990) (citing *People v. Schoondermark*, 699 P.2d 411 (Colo.1985)); *High Gear & Toke Shop v. Beacom*, 689 P.2d 624 (Colo.1984). Although not directly applicable to a city ordinance, *see Cottrell v. City & County of Denver*, 636 P.2d 703, 710 n. 16 (Colo.1981), the Colorado Administrative Procedure Act, § 24–4–105(7), 10A C.R.S. (1988), and the Federal Administrative Procedure Act, 5 U.S.C. § 556(d) (1977 & 1991 Supp.), provide that the proponent of an order shall have the burden of proof. Under the regulatory provisions of the ordinance, the city must destroy a pit bull within seven days of impoundment unless its owner petitions for a hearing. § 8–55(f). We have defined "proponent" as a party who propounds or proposes something. *Orsinger Outdoor Advertising, Inc. v. Department of Highways*, 752 P.2d 55, 67 (Colo.1988). Here, the city proposes to destroy a dog. Providing a hearing for an owner to dispute the classification of a dog does not automatically make the owner a proponent. *See* C. Koch, Jr., *Administrative Law and Practice* § 6.42 (1985 & Supp.1990); *Shatz v. United States Dept. of Justice*, 873 F.2d 1089, 1091 (8th Cir. 1989) (physician applied for registration to dispense controlled substances, Drug Enforcement Administration (DEA) issued order to show cause why the application should not be denied, physician requested hearing; held, burden on DEA to prove registration would not be in the public interest). Under section 13–25–127, 6A C.R.S. (1987), the burden of proof in civil actions is measured by a preponderance of the evidence standard. In an action applying section 13–25–127 to the Colorado Abatement of Public Nuisance Statute, section 16–13–311(3), 8A C.R.S. (1986), we held, "Since a forfeiture action is a civil

proceeding, the People bear the burden of proving the allegations of the complaint by a preponderance of the evidence." *People v. Milton*, 732 P.2d 1199, 1207 (Colo.1987). Similarly, in the present case we hold that the city bears the burden of proof of pit bull status by a preponderance of the evidence at a section 8–55(f) hearing. Accordingly, when the statute is applied in civil regulatory proceedings, we reverse the trial court's requirement that the city prove beyond a reasonable doubt that a disputed dog is a pit bull.

The criminal portions of a city ordinance need not contain an explicit provision on the burden of proof. The applicable burden is supplied by the due process clause of the fourteenth amendment to the United States Constitution. If the city charges a dog owner with a criminal violation of section 8–55, the city will bear the burden of proof beyond a reasonable doubt. *Key v. People*, 715 P.2d 319, 323 (Colo. 1986) (quoting *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970)).

The hearing procedure provided by the ordinance in section 8–55(f) may be used to enforce the civil provisions of the ordinance. The burden of proof necessarily is different than it would be for a criminal violation of the ordinance. It would be unfair if a dog owner who demanded a hearing was later subject to a criminal violation based on the regulatory finding that his dog was a pit bull. In order to avoid this situation, we hold that no pit bull determination made for regulatory purposes, where the applicable burden of proof is by a preponderance of the evidence, may be used to support a subsequent criminal charge. *See* Restatement (Second) of Judgments § 28(4) (1982).

B

The trial court grafted a pre-impoundment hearing requirement onto the ordinance. In its order, the trial court stated, "Due process rights shall include a pre-

---

tions. The council hereby declares that in these regards the provisions of this Code and

all rules and regulations promulgated hereunder are severable.

impoundment hearing, if requested by the owner, unless immediate impoundment is required for the public safety...." We disagree. In *Thiele v. City & County of Denver*, 135 Colo. 442, 312 P.2d 786 (1957), we rejected a procedural due process challenge to a dog leash ordinance by holding that a hearing to determine whether a dog was a nuisance was unnecessary before taking or disposing of the dog. *Id.* at 451, 312 P.2d at 791. Here, the pit bull ordinance provides dog owners with a constitutionally adequate post-impoundment hearing pursuant to section 8–55(f). *See Garcia v. Village of Tijeras*, 108 N.M. 116, 122, 767 P.2d 355, 361 (N.M.App.), *cert. denied*, 107 N.M. 785, 765 P.2d 758 (1988). We therefore reverse the trial court's imposition of a pre-impoundment hearing.

## IV

### *Substantive Due Process*

### A

■ The dog owners contend that section 8–55 violates substantive due process by creating a legislative presumption that a pit bull owner knowingly and voluntarily possesses a pit bull. *See People ex rel. Tooley v. Seven Thirty–Five E. Colfax, Inc.*, 697 P.2d 348, 362 (Colo.1985). Section 8–55 does not create a legislative presumption of culpability since it is a strict liability ordinance. *See People v. Garcia*, 189 Colo. 347, 352, 541 P.2d 687, 690 (1975).

■ Since section 8–55 allows the determination that a dog is a pit bull based on nonscientific evidence, the dog owners assert that they are denied substantive due process. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The city, however, is not required to meet its burden of proof with the mathematical certainty of scientific evidence. *Id.; Robinson v. United States*, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945). Therefore, even though section 8–55 permits a finding of pit bull status to be based on an expert opinion or on nonscientific evidence, such a procedure does not violate the dog owners' due process rights.

### B

■ The dog owners also assert that the city ordinance treats all pit bulls and substantially similar dogs as inherently dangerous and is, therefore, unconstitutionally overbroad. This contention is without merit. Outside the limited area of fundamental constitutional rights such as, for example, first amendment rights of speech or association, a statute may not be attacked as overbroad. *Schall v. Martin*, 467 U.S. 253, 268 n. 18, 104 S.Ct. 2403, 2412 n. 18, 81 L.Ed.2d 207 (1984); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). In addition, we do not agree with the dog owners' contention that the ordinance is underinclusive and, thus, violates due process by failing to include other dangerous breeds.[2] Upon choosing to regulate a hazard, a legislature is not required to simultaneously regulate every similar hazard. *Williamson v. Lee Optical*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); *People v. Elliott*, 186 Colo. 65, 69, 525 P.2d 457, 459 (1974); *see also State v. Peters*, 534 So.2d 760, 764 (Fla.Dist.Ct.App.1988), *review denied*, 542 So.2d 1334 (Fla.1989); *McQueen v. Kittitas County*, 115 Wash. 672, 198 P. 394 (1921). Thus, the ordinance does not deny the dog owners substantive due process of law and is not unconstitutional on that ground.

## V

### *Vagueness*

■ We also do not agree with the dog owners' argument that the term "pit bull" is imprecise and, thus, unconstitutionally vague because the average dog owner is not afforded fair warning of the act prohibited by the ordinance. "The fourteenth amendment due process guarantee against vagueness requires that laws provide fair warning to persons of ordinary intelligence of the conduct prohibited, and standards to protect against arbitrary and discriminatory enforcement." *American Dog Owners Ass'n v. Dade County*, 728 F.Supp. 1533, 1539 (S.D.Fla.1999); *see also United States*

---

**2.** The dog owners fail to cite authority for this    contention.

*v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811–12, 98 L.Ed. 989 (1954); *Florida Businessmen v. City of Hollywood,* 673 F.2d 1213, 1218 (11th Cir.1982).

Although the United States Constitution requires adequate notice of unlawful acts, it does not require the language of a legislative enactment to be mathematically precise. *Miller v. California,* 413 U.S. 15, 28, 93 S.Ct. 2607, 2617, 37 L.Ed.2d 419 (1973); *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972). Greater degrees of vagueness are tolerated when an ordinance provides for civil rather than criminal penalties. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193–94, 71 L.Ed.2d 362 (1982). Legislation is entitled to a presumption of constitutionality and is not "automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within [its] language." *Parker v. Levy,* 417 U.S. 733, 757, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974) (quoting *United States v. National Dairy Corp.,* 372 U.S. 29, 32–33, 83 S.Ct. 594, 597–98, 9 L.Ed.2d 561 (1963)).

Although many of the pit bull ordinances that have withstood vagueness challenges were construed in civil actions,[3] *Vanater v. Village of South Point,* 717 F.Supp. 1236 (S.D.Ohio 1989), reviewed a criminal ordinance with penalties similar to those in section 8–55.[4] In *Vanater,* the court emphasized the plaintiff's heavy burden in sustaining a vagueness challenge:

Facial vagueness occurs when a statute or an ordinance is so utterly void of a standard of conduct that it simply has no core and cannot be validly applied to any conduct. *See United States v. Powell,* 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975). To sustain such a challenge, the plaintiff must prove that the Ordinance

is vague, "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). There is no constitutional requirement that legislation be written with scientific precision to be enforceable. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Dandridge,* 397 U.S. at 485, 90 S.Ct. at 1161[,] citing *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913).

*Vanater* at 1243. The *Vanater* court found that whether a dog was covered by the ordinance was a matter of evidence rather than constitutional law and concluded that the ordinance was not unconstitutionally vague despite its lack of "mathematical certainty." *Id.* at 1244.

Because the ownership of a dog does not implicate fundamental rights such as speech or association, the ordinance should be upheld unless the dog owners are able to establish that the ordinance is unconstitutional on its face and incapable of any valid application. *Flipside,* 455 U.S. at 494–95, 102 S.Ct. at 1191–92; *High Gear & Toke Shop v. Beacom,* 689 P.2d at 631; *Englewood v. Hammes,* 671 P.2d 947, 951 (Colo.1983). The ordinance is not invalid for failure to list the "majority of physical traits" that are to be used to determine whether a dog is a pit bull. Admittedly, the ordinance does not list the specific physical traits of the American Pit Bull, American Staffordshire, or the Staffordshire Bull terriers. These characteristics, however, may readily be ascertained by referring to the official standards of the American Kennel Club (AKC) and the Unit-

**3.** *See, e.g., Hearn v. City of Overland Park,* 244 Kan. 638, 638–40, 772 P.2d 758, 760, *cert. denied,* 493 U.S. 976, 110 S.Ct. 500, 107 L.Ed.2d 503 (1989).

**4.** The ordinance at issue in *Vanater* provided for imprisonment of not more than sixty days

or a $1,000 fine, or both. 717 F.Supp. at 1239. The ordinance defined "pit bull terrier" as a Staffordshire or American Bull Terrier, or any mixed breed which is partly of those breeds, if it may be identified as such by an Ohio licensed veterinarian. *Id.*

ed Kennel Club (UKC).[5] Presumably, the city council felt that if it were to limit the definition of a pit bull to specific AKC or UKC standard breeds, the ordinance would be underinclusive since it would exclude substantially similar but unpedigreed dogs. By including dogs "displaying the majority of the physical traits" of the listed breeds, the city council sought to include unpedigreed dogs presenting the same danger to society. Moreover, the ordinance's hearing procedure, as construed with the burden properly placed on the city to prove pit bull status, provides a sufficient safeguard to avoid arbitrary application of the law. Based upon the evidence presented, the trial court found that doubtful cases are resolved in favor of finding that the animal in question is not a pit bull.

Since the standards for determining whether a dog is a pit bull are readily accessible to dog owners, and because most dog owners are capable of determining the breed or phenotype of their dog,[6] the trial court properly determined that the ordinance provides adequate notice to dog owners and is not unconstitutionally vague.

## VI

### Equal Protection

#### A

■ The fourteenth amendment to the United States Constitution entitles all citizens to equal protection of the laws. The dog owners argue that the ordinance violates the Equal Protection Clause by creating an irrational distinction between one who owns a dog with the physical charac-

teristics of a pit bull and one who owns a dog lacking those characteristics.

■ Legislation not implicating a fundamental right or involving a suspect class will be upheld against an equal protection challenge if it is rationally related to a legitimate governmental purpose. *Kelley v. Johnson*, 425 U.S. 238, 247, 96 S.Ct. 1440, 1445–46, 47 L.Ed.2d 708 (1976); *Austin v. Litvak*, 682 P.2d 41, 49 (Colo.1984). The trial court found that pit bull attacks, unlike attacks by other dogs, occur more often, are more severe, and are more likely to result in fatalities. The trial court also found that pit bulls tend to be stronger than other dogs, often give no warning signals before attacking, and are less willing than other dogs to retreat from an attack, even when they are in considerable pain. Since ample evidence exists to establish a rational relationship between the city's classification of certain dogs as pit bulls and the legitimate governmental purpose of protecting the health and safety of the city's residents and dogs, the trial court correctly concluded that the ordinance did not violate the dog owners' right to equal protection of the laws.[7]

#### B

■ The trial court found no rational basis for prohibiting an owner of an unlicensed pit bull dog from applying for a pit bull license and severed the portion of the ordinance limiting applications for pit bull licenses to owners of previously licensed dogs.[8] The trial court also construed the

---

**5.** The ordinance explicitly states that the AKC and UKC standards are available in the office of the city and county clerk and recorder. § 8–55(b)(2).

**6.** As *American Dog Owners*, 728 F.Supp. at 1539, noted:

> The Ordinance regulates a group, the dog owning public, that has a special knowledge of the matter being regulated. The uncontradicted testimony of the various veterinarians in this case reflects that most dog owners know the breed of their dog. In fact most dog owners look for and select a dog of a particular breed because of their knowledge of or interest in a particular breed.

**7.** Other jurisdictions have upheld similar ordinances against equal protection challenges. *See Starkey v. Chester Township*, 628 F.Supp. 196 (E.D.Pa.1986); *Hearn v. City of Overland Park*, 244 Kan. 638, 648–51, 772 P.2d 758, 766–68, *cert. denied*, 493 U.S. 976, 110 S.Ct. 500, 107 L.Ed.2d 503 (1989); *Garcia v. Village of Tijeras*, 108 N.M. 116, 121–22, 767 P.2d 355, 360–61, *cert. denied*, 107 N.M. 785, 765 P.2d 758 (1988); *State v. Peters*, 534 So.2d 760, 764 (Fla. Dist.Ct.App. 1988), *review denied*, 542 So.2d 1334 (Fla.1989).

**8.** The trial court struck the following italicized words from Section 8–55(d):

> The owner of any pit bull *which had been licensed pursuant to Section 8–61 on or before the date of publication of the ordinance enact-*

ordinance to require that the city give reasonable notice to all citizens affected by section 8–55 and that the city allow 120 days from the issuance of a final order for Denver citizens to comply with the ordinance. Because owners of unlicensed dogs are not a suspect classification and because the ordinance does not implicate a fundamental right, the rational basis test applies. *Kelley,* 425 U.S. at 247, 96 S.Ct. at 1445–46; *Austin,* 682 P.2d at 49. The city does not suggest any legitimate government interest or rational basis for such a classification, and we are unable to conceive of a legislative reason to allow owners of licensed dogs to apply for a pit bull license while denying such a license to owners of unlicensed dogs.[9] Accordingly, we affirm the trial court's construction of section 8–55(d).

## VII

### *Taking*

▬▬▬▬ The dog owners claim that section 8–55 is an abuse of the city's police power and constitutes an unconstitutional taking of private property. We disagree. In Colorado, dogs are accorded qualified property status, *Thiele v. City & County of Denver,* 135 Colo. 442, 447, 312 P.2d 786, 789 (1957), and are, thus, subject to the proper exercise of police power for the protection of the public's health, safety, and welfare. *Stone v. Mississippi,* 101 U.S. 814, 818, 25 L.Ed. 1079 (1879).

The United States Supreme Court has held that a state can deprive a citizen of property when such deprivation is justified as a legitimate exercise of police power. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980); *Sentell v. New Orleans & Carrollton R.R.,* 166 U.S. 698, 17 S.Ct. 693, 41 L.Ed. 1169 (1897). In *Sentell,* the Court said:

> ing this Section 8–55 shall be allowed to keep such pit bull within the City upon compliance with the terms of the exception contained in subdivision (c)(1) of this Section only if the owner applies for and receives an annual pit bull license *on or before November 1, 1989.*

Even if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the State, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens.

166 U.S. at 704, 17 S.Ct. at 695. Here, the legislative exercise of police power was legitimate since it was reasonably necessary to preserve and protect the public health, safety, and welfare. *See Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934).

The trial court found that the classification of pit bulls as dangerous animals had a rational basis in fact and that the prohibition of their possession bears a rational relationship to the legitimate governmental objective of protecting the public's health, safety, and welfare. The findings are supported by the record. *See Colorado Mun. League v. Mountain States Tel. & Tel. Co.,* 759 P.2d 40, 45 (Colo.1988). The trial court, therefore, properly ruled that section 8–55 was a legitimate exercise of the city's police power.

The dog owners claim that section 8–55 effects both a regulatory and a physical taking of private property without just compensation. *See First Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); *Pinewood Estates v. Barnegat Township,* 898 F.2d 347 (3d Cir.1990). State regulation of property may be so onerous as to constitute a compensable taking. *Bethlehem Evangelical Lutheran Church v. City of Lakewood,* 626 P.2d 668, 673 (Colo.1981). A city ordinance prohibiting the possession of a pit bull, however, does not result in a taking of private property if a dog owner may keep the dog by obtaining a pit bull license and complying with the minimum standards for keeping the dog in the city. *See Cannady v. North Carolina Wildlife Resources Comm'n,* 30

---

9. The city apparently does not contest the trial court's construction of section 8–55(d) to permit owners of unlicensed dogs to apply for pit bull licenses.

N.C.App. 247, 248, 226 S.E.2d 678, 679 (1976). Since the ordinance, as properly construed by the trial court, permits any current owner of a pit bull to apply for a pit bull license, section 8–55 does not constitute an unconstitutional taking of private property.

## VIII

The remaining evidentiary issues raised by the dog owners are without merit and are not addressed.

Accordingly, we affirm the trial court's construction of the ordinance which placed the burden of proof on the city by severing the portion of section 8–55(f) which provides that "[t]he petitioner shall bear the risk of nonpersuasion." However, we reverse the trial court's modification of section 8–55(f) to the extent that it required the city to prove pit bull status beyond a reasonable doubt in a hearing for a solely regulatory purpose. In addition, we affirm the trial court's severance of the portion of section 8–55(d) that limits applications for pit bull licenses to owners of licensed dogs. Finally, we affirm the trial court's provision of a thirty-day notice period and reverse its provision for a pre-impoundment hearing.

The ordinance as presently construed differs from the ordinance as applied to certain of the dog owners. To the extent that the ordinance was unconstitutionally applied to a dog owner, the owner's section 1983 claim is still viable. Compensatory damages, however, may be awarded only if a dog owner can show a denial of due process and that the dog owner would have succeeded in a proper hearing. *See generally Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). In addition, whether attorneys' fees and costs may be awarded to the dog owners under 42 U.S.C. § 1988 (1988) depends upon whether they may be considered a prevailing party.[10] We reverse and vacate the trial court's dismissal of the dog owners' claims with prejudice and the denial of their motion for attorneys' fees and costs, and remand to the trial court for a determination consistent with this opinion. We also remand to the trial court for a hearing and a determination of any unresolved issues relating to the imposition of criminal sanctions against some of the dog owners under the ordinance.

MULLARKEY, J., concurs in part and dissents in part.

ROVIRA, C.J., and LOHR, J., join in the concurrence and dissent.

Justice MULLARKEY concurring in part and dissenting in part:

I respectfully dissent from that portion of Part III A of the majority opinion which holds that the city must bear the burden of proof in an administrative proceeding initiated by the dog owner under 8–55(f) to dispute the city's classification of an impounded dog as a pit bull. I read section 8–55(f) as placing the burden of proof (denoted as the "risk of nonpersuasion") on the dog owner in an administrative proceeding. In my view, there is no basis for striking this portion of the ordinance or construing it contrary to its plain meaning. The provision for the administrative hearing should therefore be upheld and the trial court reversed on this point.

In administrative proceedings the general rule is that the proponent of an order has the burden of proof. *See, e.g.,* section 24–4–105(7), 10A C.R.S. (1988) (State Administrative Procedure Act); 5 U.S.C. § 556(d) (federal Administrative Procedure Act); Koch, *Administrative Law and Practice,* § 6.42 (1985). Under 8–55(f) of the ordinance, the aggrieved dog owner who petitions for a hearing is the moving party and in effect the proponent of an order. *Renteria v. State Dept. of Personnel,* 811 P.2d 797, 803 (Colo.1991). This means that the dog owners, who are "capable of determining the breed or phenotype of their dog" (*maj. op.* at 652), have the burden of going forward with those facts.

10. We note that to be a prevailing party it is only necessary to show some relief on the merits and that this may fall short of a formal judgment in the party's favor. *See, e.g., Dahlem v. Board of Educ.*, 901 F.2d 1508, 1512 (10th Cir.1990).

Koch, *id.* § 6.42 (1990 Supp.). Thus, the scheme of the ordinance follows the allocation of burdens common to administrative proceedings.

Even if the city rather than the dog owner is deemed to be the proponent of the order, thus making the allocation of the risk of nonpersuasion inconsistent with the general rule, the city nonetheless has the power to make exceptions to the general rule and to shift the burden of proof, or going forward, just as the state legislature has a similar power. Under section 24-4-107, which places the burden on the proponent of the order in state proceedings, the legislature has the power to provide otherwise by statute, that is, to shift the burden of proof to the private respondent. The Congress of course has similar power under the federal Administrative Procedure Act (APA), 5 U.S.C. § 556(d). *See* Koch, *id.* § 6.42 (1985) ("No matter what burden may be applied by analogy to the common law and by the APA, Congress can place the burden anywhere it wishes."). *Steadman v. S.E.C.*, 450 U.S. 91, 95 n. 9, 101 S.Ct. 999, 1004 n. 9, 67 L.Ed.2d 69 (1981).

A home rule city has the same authority. In *City and County of Denver v. State*, 788 P.2d 764, 767 (Colo.1990), we held that while the state legislature "exercise[s] supreme authority over matters of statewide concern, a home rule city is not inferior to the General Assembly with respect to local and municipal matters." Because there is no question that the regulation and/or prohibition of pit bulls in the city by the city is a matter of purely local concern, the city by proper ordinance has the power to shift the burden of proof or the risk of nonpersuasion in an 8–55(f) hearing. *See Sant v. Stephens*, 753 P.2d 752, 756 (Colo.1988) ("In matters of purely local and municipal concern, an ordinance adopted by a home rule city supersedes a conflicting state statute.").[1]

Finally, there also is no constitutional violation. Any procedural due process requirements for the administrative enforcement of the ordinance have been more than met by the 8–55(f) *hearing* itself, which is available upon petition by the dog owner who disputes the city's classification. After impoundment and evaluation, the city *notifies* the dog owner of this fact and the availability of the 8–55(f) hearing. To be sure, the impoundment of a dog by the city, coupled with an evaluation that the impounded dog is in fact a pit bull under the ordinance, does qualify as a quasi-judicial proceeding. A degree of procedural due process therefore is required. *See Cherry Hills Resort v. Cherry Hills Village*, 757 P.2d 622, 626 (Colo.1988). In this case, however, these requirements need go no further than timely notice and a hearing, which are exactly what 8–55(f) provides for the aggrieved dog owner.[2]

Procedural due process does not mandate a specific allocation of the burden of proof

1. Even if 8–55(f) creates a presumption such that CRE 301 is instructive (maj. op. at 648), that rule states that a statute may provide otherwise. In any event, under CRE 101 the scope of the rules of evidence extends to state courts, not administrative proceedings by a municipality. *People v. Milton*, 732 P.2d 1199 (Colo.1987), is inapposite since it was a civil action in a state court brought under the *State* Abatement of Public Nuisance Statute, thus implicating the burden of proof allocation provided in section 13-25-127, 6A C.R.S. (1987). As to that abatement statute, section 16-13-302, 8A C.R.S. (1991 Supp.), provides that it shall not be construed "to limit or preempt the powers of any … political subdivision to abate or control nuisances." Denver, a political subdivision, by the 8.55(f) hearing, is abating and controlling the pit bull nuisance according to its police powers.

2. Other jurisdictions have not even required an administrative hearing, much less one where the city has the burden of proof. *See Hearn v. City of Overland Park*, 244 Kan. 638, 772 P.2d 758, 762–63 (1990), upholding a pit bull ordinance, where there was no indication that an administrative hearing was even provided by the ordinance. Rather, the identification of any dog with predominant pit bull characteristics was "a matter of judgment" by the local police department. In *Singer v. City of Cincinnati*, 57 Ohio App.3d 1, 2, 566 N.E.2d 190, 191 (1990), the dog owners urged "that the ordinance [was] unreasonable because it violate[d] procedural due process guarantees by denying the owners a hearing in connection with what amounts to the deprivation of their property right[s]" in dog ownership. The court was not persuaded and not even a post-impoundment hearing was mandated. In *Garcia v. Village of Tijeras*, 108 N.M. 116, 122, 767 P.2d 355, 361 (App.1988), upholding a ban on pit bulls, the ordinance at issue made no provision for an administrative hearing. Rather, in disputed cases, the ordinance

or the risk of nonpersuasion, especially given the power of legislative bodies to allocate the burden in administrative hearings. Here, with an 8–55(f) hearing, the dog owner can be heard and may present his case. *See Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) ("the fundamental requirement of due process is the opportunity to be heard"). Allocating the risk of nonpersuasion to the dog owner at an 8–55(f) hearing does not deny constitutional due process.[3]

Thus, there is no authority, either statutory or constitutional, to support the majority's decision to uphold the trial court's reallocation of the burden of proof from the dog owner to the city. For that reason, I dissent from part III A.

ROVIRA, C.J., and LOHR, J., join in this concurrence and dissent.

provided that a " 'determination is made by a court of competent jurisdiction that the animal is' " a pit bull.

**3.** *See Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (procedural requisites at a hearing may vary, depending upon the "interests involved and the nature of the subsequent proceedings"). As to the interests involved in the case now before us, in *Thiele v. City and County of Denver*, 135 Colo. 442, 312 P.2d 786, 791 (1957), this court held that "in determining what constitutes due process ... we are bound to consider the nature of the property, the necessity for its sacrifice, and the extent to which the requirements and regulations provided in the ordinance may be regarded as within the police power." In *Thiele*, we found that it was not necessary "that a hearing be had before dogs are either taken or disposed of pursuant to the provisions of this ordinance." *Id.* As for subsequent proceedings, section 8–55(f) provides that the determination at the hearing that the dog in question is a pit bull within the scope of the ordinance shall be considered a final order and "subject to [judicial] review under Rule 106(a)(4) of the state rules of civil procedure."